IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| KEVIN J. CURTIS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION 06-00341-KD-B |
| | : | |
| BALDWIN COUNTY CORRECTION | : | |
| CENTER, *et al.*, | : | |
| | : | |
| Defendants. | : | |

## REPORT AND RECOMMENDATION

Plaintiff, an Alabama prison inmate proceeding pro se and in forma pauperis filed a Complaint under 42 U.S.C. § 1983.  This action was referred to the undersigned pursuant to 28 U.S.C. § 636(b)(1)(B) and Local Rule 72.2(c)(4), and is now before the Court on Defendants Charles "Jake" Hadley and Bradley "Brad" Ganey's Motion for Summary Judgment (Docs. 15, 19, 20), and Plaintiff's Opposition thereto (Doc. 23).  After consideration of these pleadings, and for the reasons set out below, it is recommended that Defendant's Motion for Summary Judgment be granted and that Plaintiff's action against these Defendants be dismissed without prejudice as Plaintiff has failed to exhaust an available administrative remedy.

## I.   FACTS AND PROCEEDINGS

On June 1, 2006, Curtis filed a Complaint in this Court under 42 U.S.C. § 1983. (Doc. 1).  Plaintiff named as Defendants the Gulf Shores Police Department, Baldwin County Correction Center, Sgt. C.

Hadley and CO Ganey. (Id.)  Subsequent thereto, Curtis moved to dismiss the Gulf Shores Police Department (Doc. 4), and on February 14, 2007, this Court granted Plaintiff's motion as of right pursuant to Fed.R.Civ.P. 15. (Doc. 5).  While Plaintiff did not move to dismiss the Baldwin County Corrections Center, the undersigned observes that liability under § 1983 can only be imposed against an entity that is subject to being sued.  Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992).  The capacity of a party to be sued is "determined by the law of the state in which the district court is held[.]"  Fed.R.Civ.P. 17(b); see Dean, 951 F.2d at 1214.

Under Alabama law, the sheriff, or a jailer who is appointed by the sheriff, "has the legal custody and charge of the jail in his county and all prisoners committed thereto ...."  ALA. CODE § 14-6-1.  The jail in Baldwin County is operated by the County's Sheriff's department.  An Alabama sheriff's department, however, lacks the capacity to be sued.  Dean, 951 F.2d at 1214; King v. Colbert County, 620 So.2d 623, 626 (Ala. 1993); White v. Birchfield, 582 So.2d 1085, 1087 (Ala. 1991).  Then, it follows that the jail likewise lacks the capacity to be sued.  Russell v. Mobile County Sheriff, No. Civ. A. 00-0410-CB-C, 2000 WL 1848470 (S.D. Ala. Nov. 20, 2000) (unpublished) (finding that the Mobile County Jail is not a suable entity); Marsden v. Federal Bureau of Prisons, 856 F.Supp. 832, 836 (S.D.N.Y. 1994) (finding that the

jail is not an entity amenable to suit); <u>House v. Cook County</u> <u>Dep't</u>
<u>of Corr.</u>, No. 98 C 788, 1998 WL 89095 (N.D. Ill. Feb. 13, 1998)
(unpublished) (same); <u>May v. North County Detention Facility</u>, No.
C 93-1180 BAC, 1993 WL 300290 (N.D. Cal. July 21, 1993)
(unpublished) (same).  The undersigned thus finds that the Baldwin
County Corrections Center is not a suable entity or a person for §
1983 purposes.   Accordingly,   the   undersigned   recommends   that
Plaintiff's claims against this Defendant fail as a matter of law.

        In his Complaint, Curtis alleges that during his incarceration
at   the   Baldwin   County   Corrections   Center[1],   his   constitutional
rights were violated "[b]etween the 25th and 29th of March [2006],"
when,   according   to   Curtis,   he   was   physically   assaulted   by
Defendants Sergeant Hadley and Officer Ganey. Specifically, Curtis
alleges   that   Hadley   choked   him   while   he   was   restrained   in
handcuffs, and Officer Ganey stood by watching this assault and did
not   intervene   on   Curtis'   behalf.   (Doc.   1,   p.   4-5).   Curtis
additionally asserts that he was not provided with medical care
after being assaulted by Defendants and that he was placed on a
"hitching rail," also known as a D-ring restraint, for six (6)

_____

[1] As best the Court can discern, Plaintiff was housed at the
Baldwin County Corrections Center as a pretrial detainee.
According to Plaintiff, he was "falsely" arrested in Gulf Shores,
Alabama, and was incarcerated in Baldwin County for failing to
register as a convicted felon. (Doc. 1 at 4).  Curtis further
alleges that it was eventually discovered that he did in fact
register in 2000. (<u>Id.</u>)  According to the Alabama Department of
Corrections website, Curtis is currently incarcerated at Fountain
Correctional Facility.

hours.[2]   (Id. at 4). According to Curtis, while restrained to the D-ring, he was not permitted to use bathroom facilities nor was he monitored by Corrections Center staff. (Doc. 23).   Curtis  claims that Defendants inflicted cruel and unusual punishment upon him, and  that  as  a  result  of  the  incidents  described  above,  he experienced unspecified pain and suffering.   (Doc. 1 at 7; Doc. 21). Though he does not specify in his Complaint, Curtis later alleges  violations  of  the  Eighth  and  Fourteenth  Amendments  in subsequent filings with the Court. See (Docs. 21, 23). For relief, Curtis is seeking unspecified monetary damages.   (Doc. 1 at 7).

In their Special Report and Answer (Docs. 15, 19), Defendants Hadley and Ganey deny Curtis' allegations and assert the defenses of  absolute,  qualified,  and  sovereign  immunity,  as  well  as  the failure of Plaintiff to comply with the mandatory requirements of the Prison Litigation Reform Act ("PLRA").   (Docs. 15, 19).[3]

---

[2]In his letter seeking to amend his Complaint, which the Court treated as a Motion to Amend, Curtis avers that he was restrained in the D-ring for eight (8) hours. (Doc. 4).  In his objection to Defendants' Motion for Summary Judgment (Doc. 23), Plaintiff contends that he was handcuffed to the D-ring for eight (8) to ten (10) hours.

[3]Defendants also submitted the sworn affidavits of Defendants Hadley and Ganey. See (Doc. 15, Hadley Aff.; Ganey Aff.).  In their affidavits, Defendants have indicated that during Curtis' short stay at the Baldwin County Corrections Center, he engaged in highly disruptive behavior.  (Id.) Specifically, Defendants submit that from the time Curtis was admitted to the Corrections Center and placed in a holding cell, he began to complain loudly that he had been falsely arrested. After Defendants told Curtis that he would have to wait his turn to speak with them and to remain quiet, Curtis continued to yell.

On April 22, 2009, the Court entered an Order converting Defendants' Special Report and Answer to a Motion for Summary Judgment. (Doc. 20). On May 20, 2009, Plaintiff filed an Objection to Defendants' Motion for Summary Judgment, reasserting his claims against Defendants. (Docs. 23). Defendants' motion and Plaintiff's response thereto are now before the Court.

## II. <u>SUMMARY JUDGMENT STANDARD</u>

In analyzing the propriety of a motion for summary judgment, the Court begins with these basic principles. The <u>Federal Rules of</u>

---

(<u>Id.</u>, Hadley Aff., pp. 5-6; Ganey Aff., pp. 1-2). Further, Curtis began to kick and hit the door of the holding cell. Defendants state that in light of Curtis' outbursts, it became of concern that the other inmates in the holding cell would join in Curtis' disruptive behavior and that an uncontrollable situation might erupt. As a result, Defendants indicate that in order to quell any possible riot, the officers entered the cell to remove Curtis, whereupon Curtis lunged at Officer Ganey. Sgt. Hadley managed to take Curtis to the floor, and handcuff Curtis' hands behind his back as Curtis attempted to kick him,. (<u>Id.</u>, Hadley Aff., p. 6; Ganey Aff., pp. 2-3). Defendants assert that they moved Curtis from the intake area of the Corrections Center to the regular housing or general population area, where Curtis "cursed, tried to place his feet in doorways as [they] passed through, and generally resisted all [the officers'] pleas to him to be reasonable and cooperative." (<u>Id.</u>, Hadley Aff., p. 6). Officer Ganey asserts that after moving Curtis to the general population area, he immediately returned to the intake area and had no input in the decision to leave Curtis in the general population area. (<u>Id.</u>, Ganey Aff., p. 3). Curtis was placed on a D-ring in the area outside of the regular housing area. (<u>Id.</u>, Hadley Aff., p. 6). Sgt. Hadley avers that once he cuffed Curtis to the D-ring, he left him in the charge of the shift supervisor and did not see him again. (<u>Id.</u> at 7). Both Defendants deny that Curtis was assaulted, and state that Curtis did not appear injured in any way, nor did he request medical attention or complain about any injury. (<u>Id.</u>, Hadley Aff., p. 7; Ganey Aff., p. 3). Notably, Plaintiff does not dispute the sequence of events contained in Defendants' affidavits.

Civil Procedure grant this Court authority under Rule 56 to render

"judgment as a matter of law" to a party who moves for summary

judgment.   "[S]ummary judgment is proper 'if the pleadings,

depositions, answers to interrogatories, and admissions on file,

together with the affidavits, if any, show that there is no genuine

issue as to any material fact. . . .'" Celotex Corp. v. Catrett,

477 U.S. 317, 322 (1986) (quoting Fed. R. Civ. P. 56(c)).

The Court must view the evidence produced by "the nonmoving

party, and all factual inferences arising from it, in the light

most favorable to" that party.  Barfield v. Brierton, 883 F.2d 923,

934 (11th Cir. 1989).

However, Rule 56(e) states that:

> an adverse party [to a motion for summary
> judgment] may not rest upon the mere
> allegations or denials of the adverse party's
> pleading, but the adverse party's response,
> by affidavits or as otherwise provided in
> this rule, must set forth specific facts
> showing that there is a genuine issue for
> trial.  If the adverse party does not so
> respond, summary judgment, if appropriate,
> shall be entered against the adverse party.

Fed. R. Civ. P. 56(e); see also Celotex Corp., 477 U.S. at

325-27.

"[T]here is no issue for trial unless there is sufficient

evidence favoring the nonmoving party for a jury to return a

verdict for that party. . . .  If the evidence is merely colorable,

. . . or is not significantly probative, . . . summary judgment may

be granted." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249-50

(1986) (internal citations omitted). "Summary judgment is mandated where a party 'fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Custom Mfg. & Eng'g, Inc. v. Midway Servs., Inc., 508 F.3d 641, 647 (11ᵗʰ Cir. 2007) (citations omitted).

Based upon a review of the parties' submissions, the undersigned finds that Defendants have met their evidentiary burden and demonstrated the absence of a genuine issue of material fact with respect to Curtis' failure to exhaust administrative remedies. Thus, the burden shifts to Curtis to establish, with appropriate evidence beyond the pleadings and apart from repeating conclusory allegations contained in the complaint, that a genuine issue material to his case exists. Clark v. Coats and Clark, Inc., 929 F.2d 604, 608 (11ᵗʰ Cir. 1991); Celotex, 477 U.S. at 324; Fed. R. Civ. P. 56 (e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather its response must ... set out specific facts showing a genuine issue for trial."). A genuine issue of material fact exists when the nonmoving party produces evidence that would allow a reasonable fact-finder to return a verdict in its favor. Greenberg v. BellSouth Telecomm., Inc., 498 F.3d 1258, 1263 (11ᵗʰ Cir. 2007). "A mere 'scintilla' of evidence supporting the opposing party's

position will not suffice; there must be enough of a showing that the [trier of fact] could reasonably find for that party. <u>Anderson v. Liberty Lobby</u>, 477 U.S. 242, 106 S. Ct. 2505, 2512, 91 L. Ed. 2d 202 (1986)." <u>Walker v. Darby</u>, 911 F.2d 1573, 1577 (11th Cir. 1990).

"Conclusory allegations based on subjective beliefs are likewise insufficient to create a genuine issue of material fact and, therefore, do not suffice to oppose a motion for summary judgment." <u>Johnson v. McCarty</u>, 2008 WL 5429837 at *2 (citing <u>Waddell v. Valley Forge Dental Associates, Inc.</u>, 276 F.3d 1275, 1279 (11th Cir. 2001)); <u>Holifield v. Reno</u>, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997) (Plaintiff's "conclusory assertions ..., in the absence of [admissible] supporting evidence, are insufficient to withstand summary judgment."); <u>Harris v. Ostrout</u>, 65 F.3d 912, 916 (11th Cir. 1995) (grant of summary judgment appropriate where inmate produces nothing beyond "his own conclusory allegations..."); <u>Fullman v. Graddick</u>, 739 F.2d 553, 557 (11th Cir. 1984) ("Mere verification of party's own conclusory allegations is not sufficient to oppose summary judgment..."). In this action, Curtis has failed to show that a material fact exists as to whether he exhausted his administrative remedies as required under the PLRA.

## IV. <u>DISCUSSION</u>

As noted above, Curtis seeks redress pursuant to 42 U.S.C. § 1983 for alleged constitutional deprivations arising out of his detention at the Baldwin County Corrections Center. (Doc. 1).

Specifically, Curtis complains that Defendants Hadley and Ganey

used excessive force and asserts violations of the Eighth and

Fourteenth Amendments[4] when Hadley choked him while handcuffed, and

Ganey witnessed, but did nothing to stop Hadley from attacking him.

(Docs. 1, 21, 23). Plaintiff also claims that Defendants failed to

provide proper medical treatment following the alleged attack.

Further, Curtis alleges that Defendants violated his constitutional

rights when he was restrained to a "hitching rail" for several

hours without use of the restroom. (Id.) According to Curtis, he

was placed on a D-ring restraint, without being monitored by

Corrections Center staff, causing him pain and suffering. (Id.)

As noted supra, Defendants assert that this action is due to

be dismissed for a number of reasons. One of the grounds asserted

---

[4]In addressing Plaintiff's claims brought under § 1983, the
Court begins its analysis "by identifying the specific
constitutional right allegedly infringed. . . ." Graham v.
Connor, 490 U.S. 386, 394 (1989).   In this case, the record
shows that Plaintiff was initially arrested by officers of the
Gulf Shores, Alabama Police Department and detained in the
Baldwin County Corrections Center on the charge of Failing to
Register as a Convicted Felon.  (Docs. 1; 15, Ex. A).  As it
appears that Curtis was a pretrial detainee, he was protected by
the Fourteenth Amendment's Due Process Clause.  See Williams v.
Limestone County, Ala., 198 Fed. Appx. 893, 896 n.3 (11th Cir.
2006) (unpublished) (citing Bell v. Wolfish, 441 U.S. 520
(1979)); Cottrell v. Caldwell, 85 F.3d 1480, 1490 (11th Cir.
1996) ("Claims involving the mistreatment of arrestees or
pretrial detainees in custody are governed by the Fourteenth
Amendment's Due Process Clause ..."). However,"the standard for
providing basic human needs to those incarcerated or in detention
is the same under both the Eighth and Fourteenth Amendments."
Purcell ex rel. Estate of Morgan v. Toombs County, Georgia, 400
F.3d 1313, 1318 (11th Cir. 2005) (internal quotations omitted).

by Defendants is that Curtis has failed to exhaust his available administrative remedies as required by the Prison Litigation Reform Act, 42 U.S.C. § 1997e(a).  Defendants contend specifically that Curtis failed to exhaust the administrative remedies available to him at the Baldwin County Corrections Center through the facility's inmate grievance procedure.  (Doc. 15 at 13-14).

"The Prison Litigation Reform Act of 1995 (PLRA) ... requires prisoners to exhaust prison grievance procedures before filing suit." Jones v. Bock, 549 U.S. 199, 202 (2007).  Specifically, 42 U.S.C. § 1997e(a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

"Congress has provided in §1997e(a) that an inmate must exhaust irrespective of the forms of relief sought and offered through administrative avenues." Booth v. Churner, 532 U.S. 731, 741 n.6 (2001).  "[T]he PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." Porter v. Nussle, 534 U.S. 516, 532 (2002).  "Exhaustion is a precondition to litigation in federal courts, and courts do not have the discretion to waive the §1997e(a) requirement." Mason v. FNU Bridger, 261 Fed. Appx. 225,

228 (11th Cir. 2008) (citing <u>Booth</u>, 532 U.S. at 741; and <u>Alexander v. Hawk</u>, 159 F.3d 1321, 1325-26 (11th Cir. 1998)).  "There is no question that exhaustion is mandatory under the PLRA."  <u>Jones</u>, 549 U.S. at 199-200 (citing <u>Porter</u>, 534 U.S. at 524).

Furthermore, it has been held that "the PLRA exhaustion requirement requires <u>proper exhaustion</u>."  <u>Woodford v. Ngo</u>, 548 U.S. 81, 92 (2006) (emphasis added).  In <u>Woodford</u>, the Supreme Court explained that to properly exhaust "a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court."  <u>Id.</u> at 88.  The Court went on to explain that "[p]roper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings.... Construing §1997e(a) to require proper exhaustion ... fits with the general scheme of the PLRA, whereas [a contrary] interpretation would turn that provision into a largely useless appendage."  <u>Id.</u> at 90-93.

As noted by the Court in <u>Johnson v. McCarty</u>, 2008 WL 5429837 (M.D. Ala. Dec. 21, 2008), "[t]his interpretation of the PLRA's exhaustion requirement 'carries a sanction' for noncompliance and avoids 'mak[ing] the PLRA exhaustion scheme wholly ineffective.'"  <u>Johnson</u>, 2008 WL 5429837 at *4 (quoting <u>Woodford</u>, 548 U.S. at 95).  Thus, a prisoner cannot simply bypass available administrative

remedies and then "proceed directly to federal court," either by "failing to properly exhaust available administrative remedies" or by waiting until those "remedies are no longer available."  Id. "[A]llowing federal review under these circumstances would impose 'no significant sanction' on the prisoner," id., and the Supreme Court has noted that "the PLRA did not create such a toothless scheme." Woodford, 548 U.S. at 95.  "Further, the PLRA's exhaustion requirement contains no futility exception where there is an available inmate grievance procedure." Johnson, 2008 WL 5429837 at *4 (citing Booth, 532 U.S. at 741 n.6 ("[W]e will not read futility or other exceptions into statutory exhaustion requirements where Congress has provided otherwise.") and Cox v. Mayer, 332 F.3d 422, 424-428 (6th Cir. 2003) (holding that the exhaustion requirement applies to a former prisoner who filed his complaint without exhausting his administrative remedies and who had since been released from custody)). In determining whether a plaintiff has exhausted administrative remedies, a court does "not review the effectiveness of those remedies, but rather whether remedies were available and exhausted." Miller v. Tanner, 196 F.3d 1190, 1193 (11th Cir. 1999) (citing Alexander, 159 F.3d 1326).[5]

---

[5]While Plaintiff appears to have been a pretrial detainee, he is not excused from the exhaustion requirement of the PLRA. 28 U.S.C. § 1915(h) provides that where a prisoner, such as Curtis, is proceeding in forma pauperis, "'the term prisoner means any person incarcerated or detained in any facility who is accused of, convicted of, sentenced for, or adjudicated delinquent for, violations of criminal law or terms and conditions of parole, probation, pretrial release, or diversionary program.' Thus,

In support of their exhaustion argument, Defendants have put forth evidence showing that at all times relevant to this litigation, the Baldwin County Corrections Center maintained an inmate grievance procedure.[6] (Doc. 15, Ex. E).  This procedure is available to all Corrections Center inmates, including Curtis, during incarceration at the Corrections Center.  (Id.) Specifically, Defendants have provided an affidavit by Defendant Hadley, formerly a supervisor in the intake division of the Corrections Center, which confirms that Baldwin County Corrections Center has an administrative grievance system. (Doc. 15, Hadley Aff., p. 4). According to Hadley's sworn statement, the grievance system allows an inmate to file a grievance for any number of reasons, including if the inmate believes he has been subjected to abuse, harassment, denied privileges, or that his rights have been violated. (Id.) The written grievance may be given to any member of

---

regardless of Plaintiff's status as a  pre-trial detainee ..., he is subject to the exhaustion requirement of the PLRA." Laster v. Kemp, 2005 U.S. Dist. LEXIS 18176, at * 18-19 (S.D. Ga. Aug. 5, 2005).

[6]The jail's grievance procedures are contained in the Baldwin County Corrections Center Policy and Procedure Manual, Chapter 16, "Inmate Rights." The grievance procedure reflects that inmates may report a grievance on an Inmate Grievance Form. (Doc. 15, Ex. E). The Chief Corrections Officer or Assistant Chief Corrections Officer services all inmate grievances, and the Inmate Grievance Forms are to be acted upon within three (3) working days from the date it is initially received. Once all action has been taken concerning the inmate's grievance, a copy of the form is placed in the inmate's permanent file, while the original Grievance Form is maintained for a period of three (3) years. (Id.)

the Center staff, and officers charged with the responsibility of

acting on the grievance must do so within three (3) days from the

time it is received.   Per Hadley's affidavit, each inmate is

informed of his right to file a grievance and the procedure by

which to do so. Additionally, each inmate is given an inmate

handbook at the time they are admitted to the Corrections Center.

(Id.)

     Defendants maintain that a search of Curtis' inmate file

reveals that he has never filed a grievance regarding the matters

made subject of his Complaint.   (Doc. 15); see (Doc. 15, Hadley

Aff., p. 8).   In addition, Curtis does not deny that an inmate

grievance procedure is available at the Baldwin County Corrections

Center, nor does he dispute that he is required to exhaust the

remedies available through the grievance procedure.   In fact, in

his Complaint, Curtis acknowledges that there is a prisoner

grievance procedure at the Corrections Center and admits that he

did not file a grievance regarding his complaints of excessive

force, denial of medical care, or confinement to the D-ring, which

are the central issues of his Complaint. (Doc. 1, p. 4).   Rather,

Curtis states that he did not pursue the required avenues of relief

"[b]ecause you get no results."[7] (Id.)   The Eleventh Circuit has

_____

     [7]On his § 1983 form complaint, Curtis was asked, "Is there a
prisoner grievance procedure in this institution [where action
complained of occurred]?" Curtis answered, "Yes." He was then
asked, "Did you present the facts relating to your complaint in
the state grievance procedure?" Curtis checked the answer "No"
and explained that he did not do so "[b]ecause you get no

stated that as a result of the PLRA, § 1997e requires that all claims be submitted by way of the proper grievance procedure "even if the relief offered by that program does not appear to be 'plain, speedy, and effective,' before filing those claims in federal court." Alexander, 159 F.3d at 1328.   Furthermore, as indicated supra, this Court may not consider the adequacy or futility of administrative remedies but only the availability of such remedies. Higginbottom v. Carter, 223 F.3d 1259, 1261 (11th Cir. 2000) (citing Alexander, 159 F.3d at 1323).

Curtis does not allege that he was unaware of the grievance procedure at the Baldwin County Corrections Center nor does he make a showing that he made any effort to comply with the grievance procedure, but was prevented from doing so.  By his own admission, set out above, Curtis was clearly aware of the existence and availability of the grievance system but chose not to utilize it. Furthermore, there is no suggestion of any affirmative misconduct on the part of the jail to prevent Curtis from pursuing the grievance procedure; accordingly, Curtis bore the responsibility of taking the necessary measures to comply with the proper procedures. Yousef v. Reno, 254 F.3d 1214, 1221 (10th Cir. 2001).

District courts may properly consider matters outside the pleadings and resolve factual issues related to whether a plaintiff exhausted his administrative remedies as long as the factual

---

results." (Doc. 1, p. 4).

disputes do not decide the merits.  Bryant v. Rich, 530 F.3d 1368, 1374, 1376 (11th Cir. 2008).  Thus, this Court may properly resolve the issue of whether Curtis failed to exhaust his administrative remedies.  Based upon a review of the record, including the parties' submissions, the undersigned finds that the evidence reflects that Plaintiff failed to properly exhaust his available administrative remedies at the Baldwin County Corrections Center. See Carter v. Giles, Civil Action No. 08-713, 2009 WL 88559, *7 (M.D. Ala. Jan. 13, 2009) ("The court ... concludes that the claims presented in this cause of action ... are subject to summary dismissal without prejudice as [plaintiff] failed to properly exhaust an administrative remedy available to him which is a precondition to proceeding in this court on such claims."); McCullough v. Carmichael, Civil Action No. 05-1163, 2008 WL 5111128, *6 (M.D. Ala. Dec. 2, 2008) (dismissing action because of plaintiff's failure to exhaust administrative remedies and stating "[p]laintiff's conclusory unsworn allegation that administrative remedies were unavailable without any supporting evidence is insufficient."); Moon v. Rayapati, Civil Action No. 06-384, 2008 WL 4493298, *7 (M.D. Ala. Sept. 29, 2008) (dismissing plaintiff's claims for failure to exhaust administrative remedies and explaining that "[plaintiff's] subjective belief that resort to administrative remedies would have been futile and/or ineffectual is not relevant.").  As noted above, exhaustion of available remedies applies to all prisoners in any facility, is mandatory,

16

and may not be waived by the court.  See <u>Alexander</u>, 159 F.3d at

1324-26; <u>see</u> <u>also</u> <u>Porter</u>, 534 U.S. 516.

The undisputed evidence in this action establishes that the

Baldwin County Corrections Center provides a grievance procedure

for inmate complaints and that Curtis filed no grievances

concerning the allegations in his Complaint.  Accordingly, based on

a careful review of the pleadings, documents, and records filed

herein, as well as Curtis' own admission, the undersigned

concludes that Curtis has not taken advantage of and exhausted the

administrative remedies available to him at the Baldwin County

Corrections Center with respect to his claims against the

Defendants in this action.

Based on the foregoing, this undersigned recommends that

Curtis' claims be dismissed without prejudice because he failed to

exhaust an available administrative remedy which is a precondition

to proceeding in this Court on his claims.

## V. <u>CONCLUSION</u>

If a party "fails to make a showing sufficient to establish

the existence of an element essential to that party's case, and on

which the party will bear the burden of proof at trial," Rule 56(c)

mandates that summary judgment be entered against the nonmovant.

<u>Celotex Corp.</u>, 477 U.S. at 322.  "No material issues can be in

dispute where the plaintiff's evidence fails to establish a

constitutional violation."  <u>Bennett v. Parker</u>, 898 F.2d 1530, 1534

(11th Cir. 1990).

Therefore, based on the foregoing, it is recommended that Curtis's claims against the Baldwin County Corrections Center be dismissed because it is not a suable entity or a person for § 1983 purposes.  Additionally, the undersigned recommends that Defendants Hadley and Ganey' Motion for Summary Judgment (Doc. 20) be granted, that Plaintiff's action be dismissed without prejudice, and that judgment be entered in favor of Defendants on all claims.

**DONE** this the **4th** day of **August, 2009**.


                                   /s/ SONJA F. BIVINS
                                   **UNITED STATES MAGISTRATE JUDGE**

MAGISTRATE JUDGE'S EXPLANATION OF PROCEDURAL RIGHTS
AND RESPONSIBILITIES FOLLOWING RECOMMENDATION
<u>AND FINDINGS CONCERNING NEED FOR TRANSCRIPT</u>

1.   <u>Objection</u>.   Any party who objects to this recommendation or anything in it must, within ten days of the date of service of this document, file specific written objections with the clerk of court. Failure to do so will bar a *de novo* determination by the district judge of anything in the recommendation and will bar an attack, on appeal, of the factual findings of the magistrate judge.   <u>See</u> 28 U.S.C. § 636(b)(1)(c); <u>Lewis v. Smith</u>, 855 F.2d 736, 738 (11th Cir. 1988); <u>Nettles v. Wainwright</u>, 677 F.2d 404 (5th Cir. Unit B, 1982)(*en banc*).   The procedure for challenging the findings and recommendations of the magistrate judge is set out in more detail in SD ALA LR 72.4 (June 1, 1997), which provides that:

> A party may object to a recommendation entered by a magistrate judge in a dispositive matter, that is, a matter excepted by 28 U.S.C. § 636(b)(1)(A), by filing a "Statement of Objection to Magistrate Judge's Recommendation" within ten days after being served with a copy of the recommendation, unless a different time is established by order.   The statement of objection shall specify those portions of the recommendation to which objection is made and the basis for the objection. The objecting party shall submit to the district judge, at the time of filing the objection, a brief setting forth the party's arguments that the magistrate judge's recommendation should be reviewed *de novo* and a different disposition made. It is insufficient to submit only a copy of the original brief submitted to the magistrate judge, although a copy of the original brief may be submitted or referred to and incorporated into the brief in support of the objection. Failure to submit a brief in support of the objection may be deemed an abandonment of the objection.

A magistrate judge's recommendation cannot be appealed to a Court of Appeals; only the district judge's order or judgment can be appealed.

2.   <u>Transcript (applicable where proceedings tape recorded)</u>. Pursuant to 28 U.S.C. § 1915 and Fed. R. Civ. P. 72(b), the magistrate judge finds that the tapes and original records in this action are adequate for purposes of review.   Any party planning to object to this recommendation, but unable to pay the fee for a transcript, is advised that a judicial determination that transcription is necessary is required before the United States will pay the cost of the transcript.